IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DONELL WILLIAMS #1129379 | § | |
| | § | CIVIL ACTION NO. 9:05cv122 |
| CHRISTENE PUTNAM, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Donell Williams, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Williams stated in his original complaint that the rules of the Polunsky Unit Law Library create an environment in which no one can do any type of meaningful legal research. He says that the Defendants have conspired to make him choose between going to the law library and sleeping and that the library has no set of Shepard's Citators. He said that officers Putnam and McKee do not insure that indigent supplies are given on a regular basis and do not give him extra paper or carbon paper, and these officers also give "unlawful orders" requiring inmates to keep their hands on the table."

Williams further asserts that the officers conspire to allow medium custody inmates to attend the same law library sessions as minimum custody inmates and that all inmates get only one bathroom and water break in a two-and-a-half-hour law library session. In addition, Officers Putnam, McKee, and Hoke have made a rule requiring inmates to give their housing assignment and job as well as their name and TDCJ-CID number, which is supposed to be all that is required.

1

Williams stated that "these restrictive rules" have somehow prevented him from receiving legal assistance on his lawsuit.

After review of the original complaint, the Magistrate Judge issued an order directing Williams to file an amended complaint setting out his claims with more factual specificity. *See* Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996) (Section 1983 actions against individual governmental officials require "claims of specific conduct and action giving rise to a constitutional violation," not merely conclusory assertions). Williams filed his amended complaint on August 24, 2005.

In his amended complaint, Williams says that between May of 2004 and August of 2005, a 15-month span, the Defendants have called for law library sessions at 4:15 a.m., when the usual time to exit cells for dayroom activities is 7:00 a.m. He says that this causes him to have to choose between sleep and going to the law library. During this same 15-month span, Williams says, the Defendants have allowed minimum and medium custody inmates to be in the law library at the same time. He contends that this creates a "dangerous environment" and is "very disruptive." As the Magistrate Judge observed, Williams said that "deadlines are not being met," but did not indicate that he personally had missed any deadlines nor give any examples of deadlines not being met.

Williams reiterated his complaint about not being able to take water or restroom breaks, although he acknowledged in his original complaint that one break was given during a two and a half hour law library session. He said that the lack of Shepard's Citators "affected [my] AEDPA," but gave no further explanation.

Next, Williams said that he was denied pens, paper, envelopes, and carbon paper, and that he is required to sign a form agreeing that he has received the supplies before they are given to him. He says that the officers "give orders to harass inmates," including regulating the volume of legal materials which can be brought into the law library, prohibiting the bringing of envelopes, and for inmates to keep their hands on the tables. Finally, Williams says that he and other inmates have been retaliated against by "losing legal mail, not processing or delaying legal mail," during the 15-month

span from May of 2004 until August of 2005.  He did not furnish any specific examples of his legal mail being lost or delayed.

On August 30, 2005, after review of the original and amended pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed.  The Magistrate Judge first observed that Williams had been given an opportunity to amend his pleadings to state more specific facts.  *See* Eason v. Thaler, 14 F.3d 8 (5th Cir. 1994); Gallegos v. State of Louisiana Code of Criminal Procedures Art. 658 Paragraph A and C(4), 858 F.2d 1091 (5th Cir. 1988).

Despite this opportunity, however, Williams failed to state specific facts showing that his constitutional rights had been violated.  He complained generally of incidents which he says occurred over a 15-month period, but offered no specific examples of any of the conditions complained of nor any dates of any incidents forming the basis of his claim.  In addition, Williams did not show that he had suffered any specific harm as a result of these conditions.  As the Magistrate Judge stated, the Supreme Court has held that actual injury must be shown to set out a claim for violation of the right of access to courts.  Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court); *accord*, Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986).

In this case, the Magistrate Judge noted that between December of 2004 and July of 2005, Williams filed three civil rights lawsuits, including the present one, and one habeas corpus petition.  The Magistrate Judge therefore concluded that Williams plainly is not being denied access to court, nor did Williams show that he has encountered any other difficulties in any of this litigation due to any of the conditions complained of in the law library.

Next, the Magistrate Judge determined that Williams' claim concerning the mixing of minimum and medium custody inmates did not show deliberate indifference to his safety.  As the Magistrate Judge observed, Williams himself said that this had been going on for 15 months, but did not cite a single example of a problem arising from it.  Nor did Williams show that the Defendants' state of mind in this regard is one of "deliberate indifference" to the inmates' health or safety.

With regard to Williams' complaint that inmates received only one break during a two and a half hour law library session, the Magistrate Judge observed that the indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Magistrate Judge concluded that Williams' allegations failed to rise to such a level. In Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999), by contrast, the inmates were required to spend the night in the field, without jackets or restroom facilities. The Fifth Circuit said that such conditions could amount to cruel and unusual punishment. However, the Magistrate Judge said, Williams' assertion that inmates could take only one break in a two and a half hour span falls well short of the conditions in Palmer.

The Magistrate Judge also rejected Williams' assertion that he was being forced to choose between sleep and going to the law library. He said that the law library sessions were normally called at 4:15 a.m.; the Magistrate Judge, taking judicial notice of court records, observed that in TDCJ-CID, breakfast is usually served between 3:00 and 4:00 a.m. *See, e.g.*, trial testimony in Hernandez v. Norman, et al., civil action no. 6:02cv132 (E.D.Tex.); summary judgment evidence in Whaley v. Glass, civil action no. 5:03cv140 (E.D.Tex.).

In addition, the Magistrate Judge determined that Williams had not shown any harm from his allegation of being forced to choose between sleep and going to the law library. In Chavarria v. Stacks, 102 Fed.Appx. 433 (5th Cir., July 20, 2004) (not selected for publication in the Federal Reporter), the Fifth Circuit stated that a claim of sleep deprivation must show that the deprivation was such as to amount to a deprivation of the "minimal measure of life's necessities." The Magistrate Judge stated that Williams failed to make such a showing and so his claim on this point is without merit.

Although Williams complained that he was denied supplies such as pens and paper, the Magistrate Judge stated that this claim lacked merit because Williams failed to show any harm. As

4

noted above, Williams filed three civil rights lawsuits and one habeas corpus petition between December of 2004 and July of 2005. Although Williams complained in a general fashion that he could not file a lawsuit about excessive heat, he failed to show what prevented him from doing so; the Magistrate Judge noted that he filed four separate actions in an eight-month period, and Williams offered no reason why he could not have filed five.

The Magistrate Judge went on to state that Williams' claim of the denial of legal visits lacked merit because he offered no specific facts concerning this claim, nor did he show any harm. In addition, the Fifth Circuit has held that inmates have no right to face-to-face legal visits with one another, nor to legal assistance from any particular inmate. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Beck v. Lynaugh, 842 F.2d 759 (5th Cir. 1988).

Williams complained that the officers gave orders to harass inmates, but the Magistrate Judge stated that Williams failed to show that he was harmed as a result of any such order, nor that he has ever been punished for disobeying such an order. In addition, the Magistrate Judge said, Williams also failed to show that orders limiting the amount of legal materials which can be brought into the limited space of the law library, or orders directing inmates to keep their hands on the table, in view of the officers, are unreasonable or are not rationally related to a legitimate penological objective. The Magistrate Judge specifically said that the fact that Williams may think these orders unnecessary does not render them violative of the Constitution. The Magistrate Judge next concluded that Williams' claim of retaliation lacked merit because he offered no specific facts to support it. The Magistrate Judge also determined that Williams wholly failed to show retaliatory intent or causation, nor did he set out a chronology from which retaliation may plausibly be inferred. *See* Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Instead, the Magistrate Judge said, Williams offered little more than his personal belief that he has been subjected to retaliation, unsupported by specific facts.

Finally, the Magistrate Judge examined Williams' claims concerning each named Defendant. Williams' claims of liability on the part of each Defendant, except for one, says that each Defendant is "employed by TDCJ-ID to obey all rules and policies and has failed to do so by his above unlawful

actions." To the extent that this is a claim of liability for failure to follow prison rules and procedures, the Magistrate Judge said, it is without merit, because the Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). As to the remaining Defendant, an unnamed policymaker in Huntsville, the Magistrate Judge noted that Williams says that this individual "makes and allows rules to be policy which are unconstitutional," but Williams fails to show what rules or what policies are unconstitutional. Consequently, the Magistrate Judge recommended that Williams' lawsuit be dismissed as frivolous.

Williams filed objections to the Magistrate Judge's Report on September 15, 2005. In his objections, Williams says, in a conclusory fashion, that he has stated specific claims of conduct that are not conclusory. He says that he has shown specific dates, as ordered, by stating "from May 12, 2004, until August 6, 2005." Williams says that he was somehow denied the right to submit his lawsuit concerning excessive heat, but fails to show how; he says that the fact that he was able to file other lawsuits during this same time period is "in no terms a matter for now."

Williams states that he should not have to show that he has suffered harm from the mixing of custody levels because it is "future harm." He says that the fact that he cannot use the restroom or get water whenever he wants is "harsh punishment."

Next, Williams says that he is being forced to choose between "two constitutional rights," sleep and the law library. He says that he has been choosing going to the law library over sleep, which has resulted in health problems including "crankiness."

Williams says that he has to borrow supplies and thereby break the prison rules, and that he cannot receive "white paper with no lines." He says that he does not get any indigent legal supplies on a regular basis, but then says that he has to sign the paperwork first before he receives legal supplies, which he says is "very unfair."

Finally, Williams objects to the Magistrate Judge's conclusion concerning legal visits, but says that the other inmates do not want their names involved in lawsuits such as this, and so documents proving his claims can be obtained during discovery.

Williams' objections are without merit. His assertion that he has furnished specific facts is simply incorrect; his claims are vague and conclusory, and the time period of "May 12, 2004 to August 6, 2005" does not suffice to show dates of incidents. Were the defendants to be served with process in this action, it would be virtually impossible to formulate an answer, because there are no specific allegations which could be denied or admitted. This is why the Fifth Circuit has repeatedly held that civil rights claimants must state specific facts, not conclusory allegations. Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986); Baker v. Putnal, 75 F.3d at 195.

Williams' objection concerning his allegations of denial of access to court also lacks merit. The filing of four civil actions over an eight-month period is hardly indicative of one being denied access to court. Williams failed to show how he was denied the right to file a lawsuit concerning excessive heat to go along with the others which he had filed.

The Magistrate Judge correctly determined that Williams' claim concerning the mixing of custody levels is without merit. As the Magistrate Judge observed, Williams has not shown that the fact that medium and minimum security inmates are allowed to be in the law library, a controlled environment, at the same time is a condition "posing a substantial risk of serious harm," nor has he shown that this is a "sufficiently imminent danger." As the Magistrate Judge said, Williams conceded that this condition has been going on for 15 months, from May of 2004 until August of 2005, but he failed to cite a single example of a problem arising from it. Nor did Williams show that society considers the risk inherent in the mixing of custody levels to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Horton v. Cockrell, 70 F.3d 397, 401 (5th Cir. 1995), *citing* Helling v. McKinney, 113 S.Ct. 2475 (1993). Instead, he simply speculates that harm could arise in the future. This claim is without merit.

Williams has failed to show that his constitutional rights are violated because the law library sessions are called early in the morning, when he would prefer to sleep. Williams shows no harm from the alleged denial of legal supplies, as noted above; he has received supplies adequate to file and pursue four civil actions between December of 2004 and July of 2005. The fact that he must sign for supplies before he received them does not violate the Constitution of the United States.

Williams' complaint concerning the denial of legal visits is equally without merit. Williams did not mention the Magistrate Judge's conclusion that there is no right to face-to-face legal visits nor to legal assistance from any particular inmate, but merely said that he did not have the information about specific visits but that this information could be obtained through discovery. Because no constitutional right was implicated, however, this contention is without merit.

The Court has conducted a careful *de novo* review of the Plaintiff's original and amended complaints, the Report of the Magistrate Judge, the Plaintiff's objections thereto, and all other documents and filings in the record. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil rights lawsuit be and hereby is DISMISSED with prejudice as frivolous. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

 So **ORDERED** and **SIGNED** this **29** day of **September, 2005.**

_____
Ron Clark, United States District Judge